**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THOMAS BALTRUSAITIS, et al.,

     Plaintiffs,

v.                              Case No. 20-12793

INTERNATIONAL UNION UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, et al.,

     Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' THREE
MOTIONS TO DISMISS (ECF Nos. 37, 42, 43)**

Plaintiffs are forty-seven powertrain engineers who worked for Defendant Fiat

Chrysler Automobiles ("FCA") and who were represented by Defendant United Auto

Workers ("UAW"). Plaintiffs allege that in 2011 FCA transferred their work location from

Auburn Hills, Michigan to Trenton, Michigan, in violation of a collective barging

agreement. Plaintiffs allege that Defendant UAW colluded with FCA by ignoring their

complaints and repeatedly failing to pursue formal grievances filed by Plaintiffs

protesting the transfer. Plaintiffs bring federal claims under the Racketeer Influenced

and Corrupt Organizations Act ("RICO") and Labor Management Relations Act

("LMRA") as well as related claims under Michigan law. Defendants UAW, Alphons

Iacobelli, and FCA have each filed a motion to dismiss. (ECF Nos. 37, 42, 43.) The

motions collectively seek dismissal of Plaintiffs' entire complaint. The motions have

been fully briefed, and the court concludes that a hearing is not necessary. *See* E.D.

Mich. LR 7.1(f)(2). For the reasons stated below, all three motions to dismiss will be granted as to Plaintiffs' federal claims. The court declines to exercise jurisdiction of Plaintiffs' state law claims and will dismiss those claims without prejudice.

## I. BACKGROUND

### A. Factual Background

The following facts are drawn from the Amended Complaint. (ECF No. 4.) For the purposes of deciding this motion, all well-pleaded factual allegations are accepted as true. Plaintiffs are forty-seven current and former engineers employed by Defendant FCA in the Advanced Manufacturing Engineering Powertrain division. Plaintiffs are or were members of Unit #25 represented by UAW Local 412. (Presumably, at least some of the Plaintiffs are also Michigan residents.)

The primary Defendants in this action are FCA and the UAW. Additionally, Plaintiffs have named eight individuals,[1] along with ten "John Does," who were, at all relevant times, officials within either FCA or the UAW allegedly involved in a criminal conspiracy to defraud Plaintiffs. The complaint indicates that the majority of Defendants are Michigan residents.

Before 2011, the powertrain division was housed at Chrysler Technical Center ("CTC") in Auburn Hills, Michigan. On September 26, 2011, then-FCA Vice President of Employee Relations, Defendant Alphons Iacobelli, wrote a letter to then-Vice President and Director of the UAW's Chrysler Department, General Holiefield. The letter stated that in accordance with Section 57 of the 2007 UAW-Chrysler Engineering Office and

---

[1]        A ninth named Defendant, Nancy Johnson, has been dismissed by stipulation. (ECF No. 58.)

Clerical Agreement ("CBA"), FCA intended to transfer the work performed by the engineering powertrain division from the Chrysler Tech Center to FCA's Trenton Engine plant in Trenton, Michigan, approximately fifty miles away.

Plaintiffs were "unhappy" with the transfer of their entire bargaining unit, which occurred in late 2011, because it added significant time to their daily commutes, increased fuel costs, and added vehicle wear and tear without compensation. Plaintiffs allege that they should have been reimbursed for relocation expenses and that once the transfer occurred, managers at FCA let favored employees within the bargaining unit work from CTC by allowing them to "camp out" in conference rooms or supplier's offices. Plaintiffs contend this practice was a direct violation of the collective bargaining agreement, which allowed employees with the most seniority to avoid a transfer. Despite raising these and other issues with FCA's human resources department in 2012, Plaintiffs allege that FCA failed to address the uneven treatment of employees within the transferred unit or provide a relocation allowance they contend that Plaintiffs were owed under the CBA. By 2013, Plaintiffs observed that the number of salaried bargaining unit employees within the powertrain group decreased as a result of attrition they attribute to the long commute to Trenton. They assert that this allowed FCA to rely on non-union employees to perform work traditionally performed by Plaintiffs, resulting in cost savings for FCA.

Plaintiffs allege that UAW officials were not responsive to concerns raised by Plaintiffs relative to the transfers and that the leadership of their bargaining unit routinely took company-friendly positions. When in 2015, Plaintiffs attempted to file grievances under the bargaining agreement's dispute resolution process "regarding the 2011

transfer of operations" and seeking compensation for relocation expenses, the UAW failed to pursue the grievance "beyond the second step."

In 2017, however, an intervening event occurred that Plaintiffs contend made them aware of the nature of Defendants' scheme. Plaintiffs point to the highly publicized July 2017 federal indictment of Defendant Iacobelli for his role in a bribery conspiracy involving both UAW and FCA officials. (ECF No. 3-1.) The indictment alleged that "over the course of the conspiracy FCA Vice President Alphons Iacobelli, Financial Analyst Jerome Durden, and other co-conspirators acting in the interest of employer FCA, unlawfully paid and delivered more than $1.2 million in prohibited payments and things of value, directly and indirectly, to UAW Vice President Holiefield and other UAW employees." (*Id.*, PageID.97-98.) The indictment further alleged that the defendants used the UAW-Chrysler National Training Center and related non-profits "to conceal prohibited payments" and that "FCA officials viewed the payments as an investment in 'relationship building'" with UAW officials. (*Id.*, PageID.32, 98-102.) As the government later explained in a sentencing memorandum, "FCA was seeking advantages and concessions in the negotiation and administration of the collective bargaining agreements."  (No. 4-3, PageID.478.) Iacobelli and numerous other FCA and UAW officials, including successive UAW presidents Dennis Williams and Gary Jones—who are both listed as Defendants in the present action—eventually pled guilty or were convicted of federal crimes as part of the subsequent federal investigation that uncovered significant corruption within the union.

After the Iacobelli indictment was publicly released in July 2017, Plaintiffs filed a new August 2017 grievance regarding the 2011 "Transfer of Operations," arguing that

collusion between FCA and UAW officials allowed the transfer to occur. But the new 2017 grievance was dismissed as both untimely and lacking in merit. Finally, in February 2018, Plaintiffs filed a third grievance regarding the 2011 "Transfer of Operations." But this grievance was also withdrawn by the UAW. Despite appealing the withdrawal of the grievance to the UAW's "Public Review Board"—the last step in UAW's internal appeal process—dismissal of the grievance was ultimately upheld in January 2020.

### B. Plaintiffs' Claims

Plaintiffs commenced the present litigation on October 16, 2020, and currently bring five federal claims and two state law claims. Count I and Count II allege that FCA, UAW, and several individual officials at both organizations, engaged in a pattern of racketeering by participating in a bribery scheme to injure Plaintiffs through loss of wages and benefits in violation of the RICO Act. *See* 18 U.S.C. § 1962. Plaintiffs assert that the RICO conspiracy ran from 2009 to 2018 and included efforts by the UAW to "stall" the grievance process.

Additionally, Plaintiffs assert what is often referred to as a "hybrid" claim (Count V) against FCA and UAW under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs bring a claim (Count VI) against only UAW for breach of its independent duty of fair representation under Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). And, Plaintiffs attempt to assert "common law" conspiracy claims (Count III & Count IV) under both state and federal law, as well a fraud claim under state law (Count VII).

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."
*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached
[to the complaint], public records, items appearing in the record of the case and exhibits
attached to defendant's motion to dismiss so long as they are referred to in the
Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d
426, 430 (6th Cir. 2008).

### III. DISCUSSION

Three Defendants in this action, Iacobelli, UAW, and FCA, have filed motions to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6). While not every count in the complaint is
brought against all Defendants, when considered together, all three motions collectively
seek dismissal of every count contained in Plaintiffs' Amended Complaint.  (*See* ECF
Nos. 37, 42, 43.) The court will therefore consider each claim and the arguments raised
against it in turn.

### A. Federal Labor Management Relation Act Claims

The court begins by addressing Plaintiffs' two claims brought directly under the
LMRA, 29 U.S.C. § 141 *et seq.* In Count V, Plaintiffs bring what is commonly referred to
as a "hybrid 301 claim" against Defendant FCA and Defendant UAW under Section 301
of the LMRA, 29 U.S.C. § 185. Count VI is a standalone claim under 29 U.S.C. § 159
against Defendant UAW alleging a violation of its duty of fair representation.

To state a "hybrid" claim under Section 301, Plaintiffs must allege facts showing
(1) FCA breached a provision of a collective bargaining agreement *and* (2) UAW
breached its duty of fair representation. *Vencl v. Int'l Union of Operating Eng'rs, Local*

*18*, 137 F.3d 420, 424 (6th Cir. 1998). "Liability attaches to neither employer nor union unless fault can be proved as to both." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009).

Likewise, under 29 U.S.C. § 159, a union breaches its duty of fair representation if its conduct in representing a union member was arbitrary, discriminatory, or in bad faith—"three separate and distinct possible routes by which a union may be found to have breached its duty." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994). Conduct is arbitrary if it falls "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted). Conduct is discriminatory if it is "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). Finally, conduct is in bad faith if it is undertaken "with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 644 (6th Cir. 2018).

Plaintiffs allege that FCA breached the applicable collective bargaining agreements by "bribing UAW officials. . . violat[ing] the implied duty of good faith and fair dealing implicit in all collective bargaining agreements." (ECF No. 4, PageID.391 ¶174.) And they contend that the UAW violated both sections of the LMRA by "concealment of the bribery scheme" involving its employees while "Plaintiffs' complaints, grievances, and appeals were pending." (*Id.*, PageID.392 ¶177.)

Both FCA and the UAW respectively provide substantive responses arguing that Plaintiffs have not alleged valid claims under the LMRA. Additionally, both parties also argue that these claims are barred by the LMRA's six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155, 164-66 (1983) (finding that the statute of limitations for both hybrid and fair representation claims is six months).

Defendants' arguments seeking dismissal of Counts V and VI on substantive grounds appear to have merit. *See, e.g.*, *Swanigan v. FCA US LLC,* 938 F.3d 779, 785-86 (6th Cir. 2019) (dismissing LMRA duty of fair representation claims because the plaintiffs lacked "a plausible allegation that FCA violated a specific provision of the collective-bargaining" by engaging in a bribery scheme). But the court need not delve into these complex substantive issues because case law readily demonstrates that Counts V and VI, as alleged, are time barred by the LMRA's six-month statute of limitations.

*DeShetler v. FCA US, LLC*, another civil case undergirded by the same FCA-UAW federal bribery convictions, is almost directly on point. 790 F. App'x 664 (6th Cir. 2019). In *DeShelter*, the Sixth Circuit affirmed the district court's dismissal of a "(1) a hybrid section 301 claim against UAW and FCA and (2) an independent, fair representation claim against UAW under 29 U.S.C § 185" brought by a group of current and former FCA employees on statute of limitations grounds. *Id.* at 672. In 2012 FCA sought to in-source work at a Toledo assembly plant previously conducted by an outside supplier; the *DeShelter* plaintiffs alleged that the UAW and FCA negotiated a new supplemental collective bargaining agreement that was unduly favorable to FCA and disadvantageous to certain groups of auto workers. *Id.* at 667-69, 672. The plaintiffs

9

contended that the bribery conspiracy later uncovered in 2017 federal criminal indictments supported their claim of unfair labor practices in violation of the LMRA. *Id.* at 671. And the *DeShelter* plaintiffs also alleged that the UAW purposefully failed to process the plaintiffs' grievances under the grievance procedure established by the CBA, allowing the plaintiffs' claims to be dismissed and failing to pursue appeals. *Id.* at 672.

Addressing the plaintiffs' claims in *DeShelter*, the Sixth Circuit first noted that the LMRA's six-month statute of limitations "begins to run when a claim accrues, and, '[i]n general, a claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Id.* at 670 (quoting *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993). It found, "based on their own allegations," the plaintiffs' "knew or should have known by November 2012" of defendants' unfair labor practices, and that by April 2014, the plaintiffs would have been aware "that UAW acted arbitrarily or, maybe even in bad faith" during the appeal process. *Id.* at 670-72 (citing *Rotella v. Wood*, 528 U.S. 549, 555-56 (2000)) ("[A]pplying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock" even if "considerable enquiry and investigation may be necessary" to discover the other elements). The Sixth Circuit also rejected plaintiffs' argument for equitable tolling because it found that "Plaintiffs knew or should have known of UAW's breach by April 2014" even though the federal criminal indictment was not unsealed until 2017. *Id.* at 672.

Due to Plaintiffs' filing of successive grievances under the CBA, the timeline of the present case is more complex, but the court concludes that the core holdings of *DeShetler* apply equally to the present case. The alleged improper worksite transfer that is the main source of Plaintiffs' injuries took place in late 2011, almost ten years before the present complaint was initiated in October 2020. (*See* ECF No. 4, PageID.337.)

The facts alleged in the Amended Complaint state that Plaintiffs first filed a grievance regarding the "2011 transfer of operations" in 2015, seeking relocation compensation for each affected employee, but the grievance was dismissed by the UAW at the second step in the grievances process. (*Id.*, PageID.341 ¶27.) Once the federal indictment against Alphons Iacobelli was unsealed in 2017, Plaintiffs filed another grievance disputing the transfer, but this CBA grievance was also dismissed at the appellate level on December 8, 2017. (*Id.*, PageID.342-44 ¶29-35.) Finally, Plaintiffs filed another grievance over the transfer in August 2018 that was dismissed on May 6, 2020, but the appellate board's ruling stated Plaintiffs were free to "'proceed with any external processes or remedies available to them.'" (*Id.*, PageID.346.)

The Sixth Circuit's holding in *DeShetler* indicates that, in the present case, the LMRA's six-month statute of limitations likely began running by 2015 when Plaintiffs' original grievances were dismissed because they at a minimum knew that the "UAW acted arbitrarily or, maybe even in bad faith" by dismissing the grievance. *See DeShetler*, 790 F. App'x at 672. But even if the court were to assume, *arguendo*, that Plaintiffs' claim was somehow tolled by Defendants' concealment of fraud, such tolling clearly ended after the July 2017 federal indictment publicly exposed the allegations of

11

corruption that form the basis of Plaintiffs' current claim.[2] Plaintiffs' response brief attempts to rely on the fact that Plaintiffs filed their lawsuit within six months of the dismissal of Plaintiffs' 2018 union grievance, ignoring that in 2017 it indisputably had notice of all the allegations that now comprise the elements of its LMRA when the federal indictment was unsealed. (*See* ECF No., 54, PageID.1054.) While Plaintiffs intimate that the filing of the 2018 grievance again tolled the statute of limitations until its dismissal, the Sixth Circuit has previously noted that a "plaintiff cannot toll the [LMRA's] statute of limitations by repeatedly filing grievances on the same issue," even when alleging that a union "fail[ed] to discharge its duty of fair representation." *See Plunkett v. Smurfit-Stone Container Corp.*, 247 F. App'x 604, 605-06 (6th Cir. 2007) (holding that "[t]he statute of limitations began to run after [the plaintiff] learned of the union's decision not to pursue his first grievance") (quotation omitted). Here, Plaintiffs' own complaint expressly states that their numerous CBA grievances were filed over the same issue— the 2011 "Transfer of Operations." So, Plaintiffs cannot rely on the filing of yet another grievance in 2018 to dodge the LMRA's short six-month statute of limitations. Consequently, the court finds that Counts V and VI must be dismissed because the statute of limitations clearly bars the claims.

### B. RICO Claims

Next, Plaintiffs assert two RICO claims (Counts I & II) against all Defendants. They allege that Defendants committed racketeering violations by participating in a

---

[2]    To be sure, as the court explores in detail in *Section B* below, Plaintiffs' lack of diligence regarding both their LMRA and RICO claims means that equitable tolling of the statute of limitation could not actually be applied here even if Plaintiffs had filed their present LMRA claims in the summer of 2017.

bribery scheme that violated the LMRA with the intent of lowering FCA's labor costs by transferring the Plaintiffs' work locations. *See* 18 U.S.C. § 1962(c)-(d). RICO provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*Id.*, § 1962(c).

As the U.S. Supreme Court has noted, "'racketeering activity' is a term of art defined in terms of activity that violates other laws, including more than 50 specifically mentioned federal statutes, which forbid, for example, murder-for-hire, extortion, and various kinds of fraud." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 182 (1997). RICO also states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys' fee." 18 U.S.C. § 1964(c). Although RICO itself does not provide a statute of limitations for such claims, the Supreme Court has held that civil RICO actions are subject to a four-year limitations period. *Klehr*, 521 U.S. at 182. All three motions to dismiss presently at issue argue that Plaintiffs' RICO claims are untimely under the four-year statute of limitations for RICO claims.[3]

---

[3] Defendants also argue in their respective briefs that Plaintiffs have failed to sufficiently allege that the FCA-UAW bribery scheme was a "but for" cause of Plaintiffs' transfer, and that Plaintiffs' RICO claims are "precluded" by the more tailored remedies available under the LMRA. But the court declines to address these alternative arguments as it finds Plaintiffs' RICO claims are time barred.

The court finds the claims would still be barred by RICO's four-year statute of limitations. Because the RICO Act does not specify a statute of limitations in its text, determining when a civil RICO cause of action accrues can be complicated, and the rules have also evolved over time. Initially, "most Courts of Appeals. . .  applied an 'injury and pattern discovery rule'" whereby "the statute of limitations begins to run when the plaintiff knew or should have known that each element of a civil RICO claim existed: the injury, the source of the injury, and the pattern of activities prohibited under RICO causing the injury." *Statutes of limitations for RICO claims*, 1 L. of Toxic Torts § 6:23 (2022).

In *Rotella v. Wood*, however, the Supreme Court rejected this "injury and pattern discovery rule," and instead found the applicable test is "when a plaintiff knew or should have known of his injury." 528 U.S. 549, 554 (2000). "In other words, the 'discovery of the injury,' not discovery of the other elements of a claim, is what starts the clock." *Elam v. Aurora Servs. Loan, LLC*, No. 2:17-CV-02188TLPTMP, 2018 WL 2074202, at *4 (W.D. Tenn. May 2, 2018) (quoting *Rotella*, 528 U.S. at 555); *Sims v. Ohio Cas. Ins. Co.,* 151 Fed. App'x 433, 435 (6th Cir. 2005) ("The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation.").

However, *Rotella* did not provide guidance for how to handle situations where a RICO scheme causes the plaintiff "a new independent injury" at a later date. *See Goff v. Nationwide Mut. Ins. Co.*, No. 2:18-CV-340, 2019 WL 7604826, at *7 (S.D. Ohio Sept. 30, 2019). In the absence of a definitive ruling, a number of Circuits have endorsed a "'separate accrual rule,'. . . under which the commission of a separable, new predicate

14

act within the 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act." *Id.*; *see also Trollinger v. Tyson Foods, Inc.,* No. 4:02-CV-23, 2006 WL 319022, at \*4 (E.D. Tenn. Feb. 8, 2006) (collecting cases). The Sixth Circuit has not yet indicated whether it will also adopt the "separate accrual rule." *Id.*

Defendants argue that "[a]s the Amended Complaint makes clear, Plaintiffs were aware of the injuries that they seek to remedy in this lawsuit—the alleged loss of wages and benefits resulting from their 2011 transfer from Auburn Hills to Trenton—many years ago." (ECF No. 43, PageID.966.) And Defendants point out that since this action was filed on October 16, 2020, if the statute of limitations had started running at any time before October 16, 2016, Plaintiffs' claims would be time-barred. (*Id.*)

Plaintiffs respond by taking an "all of the above" approach to contesting the statute of limitations issue. Specifically, Plaintiffs contend (1) that the "injury and pattern discovery rule" is still valid after *Rotella*; (2) that "the statute of limitations question cannot be resolved at the pleadings stage;" (3) that Defendants' denial of Plaintiffs' CBA grievances constitute new predicate acts subject to the separate accrual rule; and (4) that the statute of limitations was equitably tolled because Defendants took steps to conceal their fraud. (ECF No. 54, PageID.1036-45.) The court finds, however, that none of these arguments save Plaintiffs' RICO claims from being time barred.

First, Plaintiffs are simply incorrect in their interpretation of *Rotella*. *Rotella* squarely rejected the possibility that a civil RICO claim accrues only when a plaintiff discovers "both an injury and a pattern of RICO activity." (*Id.*, PageID.1036.) *See Rotella*, 528 U.S. at 554, ("Today, guided by principles enunciated in *Klehr*, we *eliminate* the latter. . .   injury and pattern discovery rule.") (emphasis added). Besides attempting

15

to reinterpret a footnote in *Rotella*, Plaintiffs provide no citation for the proposition that the injury and pattern of discovery rule remains viable; Plaintiffs' reading is simply inconsistent with how virtually all courts have interpreted *Rotella*'s holding. *See Mathews v. Kidder, Peabody & Co.,* 260 F.3d 239, 245 (3d Cir. 2001) ("The [Supreme] Court. . . narrowed the possible approaches by rejecting the injury and pattern discovery rule."); *Taylor Grp. v. ANR Storage Co.*, 24 F. App'x 319, 325 n.1 (6th Cir. 2001) (noting that *"[b]efore Rotella*, this Circuit applied the "injury and pattern discovery rule" to civil RICO claims) (emphasis added); *Osborn v. Griffin,* 50 F. Supp. 3d 772, 806 (E.D. Ky. 2014) ("*Rotella* thus stands for the proposition that a plaintiff need not know all the elements required to bring a civil RICO claim to start the limitations period running."). Consequently, absent equitable tolling, the statute of limitation began running on Plaintiffs claims as soon as it discovered the injury, which Plaintiffs' complaint expressly indicated occurred at the time of the worksite transfer in 2011. *See Rotella*, 528 U.S. at 554.

Plaintiffs' second argument is equally unavailing; there is simply no rule preventing a statute of limitations dispute involving a civil RICO claim from being resolved at the pleadings stage. (*See* ECF No. 54, PageID.1038.) Plaintiffs are correct that usually "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6)...motions, because '[a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim.'" *Munson Hardisty, LLC v. Legacy Pointe Apartments*, *LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)). But the Sixth Circuit has clarified that a

plaintiff has an "obligation to plead facts in avoidance of the statute of limitations defense" when "it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir.1992)). Because Plaintiffs assert RICO claims almost a decade after Plaintiffs were allegedly first injured by the improper transfer, this heightened pleading "obligation" clearly applies to the present case. *See id.* And there is nothing unique about a RICO cause of action that presents its own dismissal on statute of limitations grounds; it is easy to find examples of civil RICO claims being dismissed on a Rule 12(b)(6) motion in this circuit. *See, e.g.*, *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("[T]he [district] court did not err in dismissing the count on grounds that the four year federal statute of limitations for civil RICO actions had expired."); *Roberson v. Medtronic, Inc.*, 494 F. Supp. 2d 864, 872 (W.D. Tenn. 2007) (granting a motion to dismiss because the RICO complaint was "filed well beyond the statutory deadline and Plaintiffs have presented no argument as to why the statutory period should commence on a different date or why the statute of limitations should be tolled").

Third, the court finds that the "separate accrual rule" cannot rescue any part of Plaintiffs' RICO claims from the statute of limitations. Plaintiffs contend that even if a claim based on the 2011 worksite transfer is barred by the statute of limitations, they still should be able "to recover for additional damages caused by" the Defendants' "commission of a separate, new predicate act within the 4-year limitations period." (ECF No. 54, PageID.1040.) Plaintiffs assert that "[D]efendants' continued denial of [P]laintiffs' grievances through early-mid 2018 while . . . [D]efendants were compromised in the

17

collective bargaining process caused a 'new and independent'" injury. (*Id.*, PageID.1042.) While it is true, as Plaintiffs point out, that several circuits have adopted the "separate accrual rule," the court need not forecast whether the Sixth Circuit would also endorse such a rule because Plaintiffs' complaint does not contain allegations asserting the kind of new subsequent injury that would support an independent claim under a separate accrual rule.

As *Trollinger* notes, courts adopting the accrual rule "analyze what types of injuries will restart the statute of limitations clock." 2006 WL 319022, at *5. The Ninth Circuit, for instance, expressly laid out a two-part test finding that "'two elements characterize an overt act which will restart the statute of limitations: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) It must inflict new and accumulating injury on the plaintiff.'" *Grimmett v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996) (quoting *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir.1987)); *see also Lehman v. Lucom,* 727 F.3d 1326, 1331 (11th Cir. 2013) (adopting the Ninth Circuit's test to determine the applicability of the separate accrual rule to a RICO claim); *Trollinger*, 2006 WL 319022, at *5 (applying the two-part test from *Pace* and *Grimmett*).[4]

Under the accrual rule's test for determining what constitutes a *new* injury, Plaintiffs' argument—that it could still pursue a RICO claim based only on the

---

[4]     The Sixth Circuit has already adopted essentially the same standard for antitrust claims brought under the Clayton Act, a largely analogous statute. *See Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014) ("The most important tenet of the Sixth Circuit's continuing violations doctrine is that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action.") (quotation omitted).

Defendants' repeated denial of its grievances—cannot survive. To start, Plaintiffs cannot point to any pleading in the complaint alleging new harms they incurred as a result of the grievance denials. Instead, Plaintiffs' filing of subsequent grievances appears to have been focused explicitly on rectifying the alleged harms caused by the initial transfer. For instance, Plaintiffs' Amended Complaint states that the 2015 grievance "*regard[ed] the 2011 transfer* of operations . . . [and] sought payment of $30,000" in compensation. (ECF No. 4, PageID.341. (emphasis added)) And the 2017 "grievance sought $172,800 . . . to compensate for additional daily commuting time . . . [and] requested that employees be relocated back to CTC." (ECF No. 4, PageID.342 (emphasis added).) While Plaintiffs' damages due to the initial transfer may have continued to accrue over the years, these costs are "merely continuations of the same injuries previously alleged." *Lehman*, 727 F.3d at 1333; *see also*, *Elam*, 2018 WL 2074202, at *4 (finding that "[t]he time of the first foreclosure action is thus the 'injury' that begins RICO's statute-of-limitations clock" and that later foreclosure attempts could not be considered distinct injuries). So, while Defendants' denial of each grievance could arguably constitute a separate predicate act, the lack of a new, distinct injury caused by the denial of the grievances means that the statute of limitations would still have begun to run when Plaintiffs became aware of the initial injuries caused by the transfer in 2011.

But, even if the court were to assume, for the sake of argument, that the denial of Plaintiffs' first 2015 grievance could constitute a new injury, distinct from the initial injury caused by the 2011 transfer, Plaintiffs' claim would still be barred by the statute of limitations. Plaintiffs' initial 2015 grievance was denied more than four years before the

present case was filed. So, for Plaintiffs' claims to survive the statute of limitations through application of the separate accrual rule, Plaintiffs would need to have plausibility pleaded that denial of its grievances in 2017 and 2018 was not "merely a reaffirmation" of Defendants' denial of its 2015 grievance. *See Lehman*, 727 F.3d at 1333 (quotation omitted) (alteration omitted). Because Plaintiffs have expressly pled that each subsequent grievance addressed essentially the same issue as the first 2015 grievance, Plaintiffs cannot demonstrate it incurred new injuries as a result of the subsequent denials. In sum, no matter how the complaint is interpreted, the court concludes that the separate accrual rule cannot save Plaintiffs' RICO claims from the statute of limitations.

Fourth, Plaintiffs' final argument is that the statute of limitations of the RICO claims is subject to equitable tolling. However, the court finds that the facts, as alleged in the Amended Complaint, cannot support a claim for equitable tolling. The Supreme Court has previously noted that the statute of limitations for a RICO claim, like most federal claims, can be paused by equitable tolling. *See Rotella*, 528 U.S. at 560. "This doctrine allows a plaintiff to assert a civil RICO claim where a defendant has taken steps to conceal his existence or activities through fraud, and the plaintiff, 'without any fault or want of diligence or care on his part,' is unable to discover the injury within the limitations period." *Grange Mut. Cas. Co. v. Mack*, No. CIV.A. 6:06-555-DCR, 2009 WL 1036092, at *5 (E.D. Ky. Apr. 17, 2009) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). However, equitable tolling is a narrow exception that should be "applied sparingly," *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), and the Sixth Circuit has adopted the following general test for its application:

> Under F.R.Civ.P. 9(b), the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity. Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.

*Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6th Cir. 1982) (quotation omitted).

Plaintiffs argue that equitable tolling should apply to their RICO claims because they have "adequately plead that the [D]efendants took steps to conceal their activities through fraud and that plaintiffs, despite their diligence in filing grievances and appeals and complaining informally to company officials, were unable to discover the injury within the limitations period." (ECF No. 54, PageID.1044.) Plaintiffs argue that "the statute did not begin to run until July 2017, when the Iacobelli indictment became public, or January 2018, when the Iacobelli plea agreement made the RICO scheme clear." (ECF No. 4, PageID.388-89 ¶163.) Defendants, by contrast, argue that Plaintiffs have not plausibly alleged the elements required for equitable tolling.

The court finds that equitable tolling cannot save RICO claims because Plaintiffs have (1) failed to identify how Defendants' alleged conduct prevented them from discovering their *injury* within the four-year statute of limitations period, (2) or act with necessary diligence after the bribery scheme was fully revealed.

Here, Plaintiffs' Amended Complaint expressly states that "[s]oon after the transfers began [in 2011], [P]laintiffs became aware that the transfer provisions of the collective bargaining were being violated," that Plaintiffs raised complaints with FCA's human resources department in 2012 that were "never acted on," and that "[b]etween 2012 and 2015, [UAW] union leadership was not responsive to concerns raised by

[P]laintiffs relative to the transfer. . . [taking] company-friendly positions on a number of issues." (ECF No. 4, PageID.338-40.)

The facts, as alleged in the Amended Complaint, show that Plaintiffs' pre-existing knowledge proves fatal to their argument for equitable tolling. Indeed, precedent cited by Plaintiffs in support of tolling states only that equitable tolling "allows a plaintiff to assert a civil RICO claim where a defendant has taken steps to conceal his existence or activities through fraud, and the plaintiff, 'without any fault or want of diligence or care on his part,' is *unable to discover the injury* within the limitations period." *Grange Mut. Cas. Co. v. Mack*, No. CIV.A. 6:06-555-DCR, 2009 WL 1036092, at *5 (E.D. Ky. Apr. 17, 2009) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)) (emphasis added). While Plaintiffs might not have known the full extent of Defendants' scheme, or every one of Defendants' motivations for participation (receiving bribes), given the facts alleged in the Amended Complaint, Plaintiffs cannot benefit from tolling here because they were aware of their *injury* and the "possibility" that the different Defendants were colluding before learning about the federal indictment. *See DeShetler,* 790 F. App'x at 672 (declining to apply equitable tolling because "Plaintiffs need not know the extent of the alleged breach of the duty of fair representation to file a claim" and "Plaintiffs' own allegations show that they should have already known that UAW acted arbitrarily") (quotation omitted); *Chapple v. Nat'l Starch & Chem. Co. & Oil,* 178 F.3d 501, 506 (7th Cir. 1999) ("[T]he tolling inquiry asks only whether the plaintiff was unable to learn of the possibility of its claim within the limitations period; it does not ask whether the plaintiff was unable to obtain solid proof.").

But even if Plaintiffs had been able to show that the statute of limitations should have been tolled until the July 2017 federal indictment revealed Defendants' racketeering, Plaintiffs' lack of diligence once it discovered underlying facts means Plaintiffs RICO claims are still time barred. In other contexts, the Sixth Circuit has recognized that equitable tolling "is not appropriate" when "a lack of due diligence" results in a substantial delay bringing a claim once facts are known to the plaintiff. *Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004) (affirming dismissal of a habeas petition and declining to apply equitable tolling because of a fourteen-month delay between conviction and filing of the habeas petition); *see also Campbell*, 676 F.2d at 1128 ("A plaintiff who requests the avoidance of the[] [statute of limitations through tolling] owes the courts, the public, and his adversaries a duty of diligence in discovering and *filing* his lawsuit.") (emphasis added). And in a situation closely analogous to the present case, the Seventh Circuit found it would be inappropriate to apply equitable tolling when a plaintiff waited one year to file suit after it discovered the facts that undergirded its RICO claim. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 931 (7th Cir. 2015) (quotation omitted) ("[A] plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information. Similarly, equitable estoppel, also called fraudulent concealment, applies only when plaintiffs act with reasonable diligence to discover and file their claims."). These precedents demonstrate that the court also cannot toll the statute of limitations here because Plaintiffs waited well over two years to file their RICO claims after they learned

about the allegations in the 2017 indictment. In sum, Plaintiffs' RICO claims are barred by the statute of limitations.

### C. Federal Conspiracy Claim

Plaintiff's amended complaint also included a "Federal civil conspiracy claim" (Count III). After Defendants' briefing pointed out that there is no separate cause of action for a civil "common law" conspiracy under federal law (*see* ECF No. 37, PageID.754), Plaintiffs indicate in their response brief that they "consent to dismissal of Court III," (ECF No.54, PageID.1062). Consequently, the court will dismiss Count III.

### D. Michigan State Law Claims

In addition to the federal claims already discussed above, Plaintiffs' amended complaint contains two additional counts brought under Michigan common law. Plaintiff alleges that a civil conspiracy exists between all Defendants (Count IV) and fraud (Counts VIII). (ECF No. 4, PageID.391, 93.) But, because the court has already dismissed all federal claims at issue, the court will decline to exercise supplemental jurisdiction over these two remaining claims.

Plaintiffs' suit is brought under federal question jurisdiction. 28 U.S.C. § 1331. (*Id.*, PageID.336.) The only basis of jurisdiction for Plaintiffs' state law claim is supplemental jurisdiction under 28 U.S.C. § 1367 because Plaintiffs, and many of the Defendants, are citizens of Michigan. (*Id.*) A district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir.

1996). Only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial." *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir.1991). The court finds no "overwhelming" judicial economy interests exist with regard to these remaining claims, so the court declines to exercise supplemental jurisdiction and will instead dismiss Count IV and Count VIII without prejudice.

## IV. CONCLUSION

For the reasons explained above, the court finds that Plaintiffs' claims under both the Federal Labor Management Relations Act and the Racketeer Influence and Corrupt Organizations Act are time barred by the statute of limitations. Nor can Plaintiffs bring a claim for "common law" conspiracy under federal law. Given the dismissal of the federal claims, the court also declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Accordingly,

IT IS ORDERED that Defendant Alphons Iacobelli's Motion to Dismiss (ECF No. 37) is GRANTED as to Counts (I)-(III).

IT IS ORDERED that Defendant FCA's Motion to Dismiss (ECF No. 42) is GRANTED as to Counts (I)-(III) and Count (V).

IT IS ORDERED that Defendant UAW's Motion to Dismiss (ECF No. 43) is GRANTED as to Counts (I)-(III) and Count (V)-(VI).

IT IS ORDERED that Counts (I-III) and Counts (V-VI) in Plaintiff's Amended

Complaint, (ECF No. 4), are DISMISSED WITH PREJUDICE.[5]

IT IS FURTHER ORDERED that Plaintiff's state law civil conspiracy claim (Count

IV) and state law fraud claim (Count VII) are DISMISSED WITHOUT PREJUDICE.


s/Robert H. Cleland                /<br>ROBERT H. CLELAND<br>UNITED STATES DISTRICT JUDGE

Dated:  March 23, 2022


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 23, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                /<br>Case Manager and Deputy Clerk<br>(810) 292-6522


S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-12793.BALTRUSAITIS.MTD.AAB.RHC.docx

---

[5]     While some individual Defendants did not move for dismissal, the court's
analysis is not Defendant specific and therefore applies equally to all Defendants, so
complete dismissal of these counts is appropriate.